JONES, et al., v. FOULGER, City Treasurer, et al.

No. 2737.   Decided July 12, 1915.   (150 Pac. 933.)

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—NOTICE OF MAN-DAMUS.   Comp. Laws 1907, section 273, provides that before the levy of any taxes for public improvements, the city council shall publish notice of intention to levy such taxes, which notice shall describe the improvements proposed and the boundaries of the district to be affected or benefited by the improvement.   The city council gave notice of its intention to open an avenue, and defined the district affected to be the whole of the avenue for a certain distance and a strip forty-eight feet in width on each side, when opened as proposed, and abutting thereon, and declared the district to be benefited and taxed for such improvement to be a strip of land forty-eight feet wide abutting on the east side of such avenue, described by metes and bounds, and a strip of the same width abutting on the west side described by metes and bounds.   Held, that the notice of intention was jurisdictional, and that the plaintiffs' property not necessarily included in the general description and expressly excluded by the specific description, could not thereafter be legally assessed by an amendment to the tax ordinance so as to include it without a new notice of intention.[1]

Appeal from District Court, Second District; Hon. N. J. Harris, Judge.

Action for injunction by Edgar Jones and others against Wallace Foulger, City Treasurer of Ogden City, and Ogden City.

Judgment for plaintiffs.   Defendants appeal.

[1]Armstrong v. Ogden City, 9 Utah, 255, 34 Pac. 53.

AFFIRMED.

*Valentine Gideon* for appellants.

*J. E. Bagley* and *J. D. Murphy* for respondents.

FRICK, J.

The plaintiffs, Jones, Spiers, and Houtz, commenced this action in the District Court of Weber County to restrain the defendant Foulger, as treasurer of Ogden City, and said city from collecting a certain special tax assessed against the property of the plaintiffs for the purpose of making a public improvement, to wit: to open up a street, and to have said tax declared void. The defendants answered the complaint, and averred that the tax in question was legally and regularly assessed as required by law, and hence was a valid tax. The facts are simple and undisputed. We append the following plat upon which the property in question is shown, and reference thereto will lead to a better understanding of the questions involved here:

The strip marked "A" on the plat represents Hudson avenue, which is the strip referred to in the notice of intention

published by Ogden City hereinafter set forth. Hudson ave-
nue in fact extends considerably farther north than is shown
on the plat. The parcels marked "H," "J," and "S," re-
spectively, are owned by the plaintiffs, the parcel marked "H"
being owned by the plaintiff Houtz, the parcel marked "J" by
the plaintiff Jones, and the parcel marked "S" by plaintiff
Spiers. On August 28, 1909, Ogden City published its notice
of intention to make a public improvement, to wit: to open
a street through a certain block in said city to be named
Hudson avenue, as shown on the foregoing plat. In view
that the notice of intention is claimed to be jurisdictional,
and since it constitutes the bone of contention here, we give it
in full. It reads as follows:

"Notice is hereby given by the city council of Ogden City,
Utah, of the intention of such council to make the following
improvements, to wit:

"To open Hudson avenue through block twenty-five (25),
plat 'A,' Ogden City survey, sixty (60) feet wide through
the center of said block twenty-five (25), the whole distance
from Twenty-Fourth to Twenty-Fifth streets, said avenue to
be thirty (30) feet in width on either and both sides of the
center line of said block.

"The estimated cost of said improvements is $100,000.

"The district affected by said improvements is the whole of
said Hudson avenue to be opened and a strip of land forty-
eight (48) feet in width on either and both sides of said avenue
when opened as proposed, and abutting thereon.

"For the payment of the costs and expenses of making
said improvements the city council intends to levy and col-
lect special and local taxes upon the lots, blocks, parts of
lots, blocks, lands and real estate lying and being within
the boundaries of the district benefited and affected, to the
extent of the benefits to said property by reason of said im-
provements.

"The district to be benefited and affected by said improve-
ment and taxed to pay the costs and expenses of same is a
strip of land forty-eight (48) feet wide abutting on the
east side of said Hudson avenue when opened as proposed,
beginning thirty-four and five-tenths (34.5) feet south of

the north line of lot one (1), and running thence north to the
south line of lot seven (7) ; and a strip of land forty-eight
(48) feet wide abutting on the west side of said Hudson ave-
nue when opened as proposed, beginning at the north line
of lot two (2) and running thence north to the south line of
lot six (6), all in said block twenty-five (25).

"The city council will, on Monday, the 20th day of Sep-
tember, 1909, at 8 o'clock p. m., in the city council chamber,
City Hall, Ogden, Utah, hear objections in writing from any
and all persons interested in said local and special assess-
ment."

It will be observed that the notice contains both a general
and specific description of the property to be affected and
benefited by the improvement. In the general description
which immediately follows the statement of the estimated
cost of the proposed improvement, it is stated that the prop-
erty or—

"district affected by said improvements is the whole of
said Hudson avenue to be opened and a strip of land forty-
eight (48) feet in width on either and both sides of said avenue
when opened as proposed, and abutting thereon."

Another description follows the foregoing by which the
property or "district to be benefited and affected by said
improvements and taxed to pay the costs and expenses" there-
of is more specifically described. The property to be assessed
to defray the costs of the improvement, according to the spe-
cific description begins at the point marked "a" on the plat,
which is part of lot 1, and from that point runs north (away
from the plaintiff Spiers' property) to the "south line of lot
7," which line is to the north of the property indicated on the
plat. Beginning, therefore, at said point "a" a strip of
ground forty-eight feet wide along the east side of Hudson
avenue, and which is a part of the land marked "C" on the
plat, is included; while the description on the west side of said
avenue begins at the point marked "b" on the plat and "run-
ning thence north to the south line of lot 6," which descrip-
tion covers the east forty-eight feet of the strip marked "D"
on the plat all of which lies north of any land owned by either
of the plaintiffs. After the foregoing notice of intention was

published and in pursuance thereof, as required by our statute, the city council of Ogden City duly passed an ordinance by which a special tax was levied to pay the cost and expenses of said improvement upon the property contained in the specific description we have just given and excluding the property of all of the plaintiffs. Pursuant to that ordinance, and as required by law, a board of equalization was formed, which duly published notice of its sittings and at said sittings heard all complaints respecting the equality of the proposed assessments upon the abutting property contained in said specific description. That board, however, on June 18, 1910, held that the property of the plaintiffs herein was benefited by the proposed improvement, and recommended that the same be assessed with the abutting property. The city council adopted the recommendation of said board, and, on the 21st day of June, 1910, passed an ordinance by which it "amended" its original ordinance in which it had levied the special tax, and in the amended ordinance the property of the plaintiffs was included and likewise assessed. It is the special tax imposed by the amended ordinance that is in question here and which, it is contended, is void.

The plaintiffs contended in the court below that, inasmuch as their property was excluded from the notice of intention and from the original ordinance, the city council exceeded its authority in levying the special tax in the amended ordinance. In other words, they contend that under our statute the notice of intention is jurisdictional, and that property not included within that notice cannot thereafter be legally assessed unless a new notice of intention be published, as required by our statute. The lower court so ruled and pursuant thereto entered judgment declaring the tax void, and permanently enjoined the defendants from collecting the same. Our statute, Com. Laws 1907, section 273, relating to the giving of notice of intention to levy special taxes for improvements provides as follows:

"In all cases before the levy of any taxes for improvements provided for in this chapter, the city council shall give notice of intention to levy said taxes, naming the purposes for which the taxes are to be levied, which notice shall be published

at least twenty days in a newspaper published within such city. Such notice shall describe the improvements so proposed, the boundaries of the district to be affected or benefited by such improvements, the estimated cost of such improvements, and designate a time when the council will consider the proposed levy. If, at or before the time so fixed, written objections to such improvements signed by the owners of two-thirds of the front feet abutting upon that portion of the street, lane, avenue, or alley to be so improved, be not filed with the recorder, the council shall be deemed to have acquired jurisdiction to order the making of such improvements."

Appellants rely on the case of Armstrong v. Ogden City, 9 Utah 255, 34 Pac. 53, where the question of the sufficiency of the notice of intention under section 273, supra, was passed on. There is nothing in that case which lends any color to the claim that the notice of intention is not jurisdictional, or that the property sought to be assessed for the proposed improvement need not be included in such notice by at least a general description, that is, by at least correctly stating the boundaries of the district so that the owner of property may know whether it will be claimed that his property is benefited or not. We think that the decision in that case sustains the plaintiff's, rather than appellant's, contention. Where a statute requires that before levying special assessments notice shall be published, and prescribes what such notice shall contain, the courts generally hold that the giving of such notice is jurisdictional, and must substantially be complied with in order to authorize the levying of the special assessment. 4 McQuillin, Mun. Corps. Sections 1849-1852; Hamilton, Law of Special Assessments, Sections 141, 142, 145. The diversity among the decisions is not with respect to the giving of notice, but there is a marked difference among them with respect to the sufficiency of the notice where notice is given. Appellants do not contend that the statutory notice can be omitted, nor that such a notice is not jurisdictional, but their contention really is that the notice of intention as published in this case included the property of the plaintiffs, and is therefore sufficient. We are of the opinion, however, that under the most elementary rules of construction the property

of the plaintiffs must be excluded from the notice as published., The most that can be claimed for the notice is that if the general description is examined only from one point of view, it may be claimed, with some show of reason, that the property of the plaintiffs was included. It must, however, also be said that if the general description is considered from every angle . as it must be, their property is not necessarily included even within the general description. If, however, we have recourse to the specific description of the property covered in the notice, then the property of the plaintiffs is, in express terms, excluded. Again, even in the general description, the property in the notice is limited to such as is "abutting thereon," that is, abutting on Hudson avenue, the street which was to be opened. By referring to the plat it will be seen that plaintiffs' property did not actually abut, that is, adjoin the proposed street.· We need not pause now, however, to determine what property is "bounding, abutting or adjacent" on or to a contemplated improvement within the purview of our statute. It is sufficient now to determine that the description contained in the notice of intention clearly and manifestly did not include the property of the plaintiffs as abutting property. That was also the view of the board of equalization, and likewise of the city council when the original ordinance was adopted. Had the city council thought that the property of the plaintiffs was included in the notice of intention, it would have levied the special tax thereon in the original ordinance, and no "amended" ordinance would have been necessary. We thus have a clear case where by a general statement something may be deemed to be included which by a particular statement is, however, clearly and manifestly excluded. This case, therefore, must be regarded as though no notice of intention had been published in so far as the plaintiffs are concerned. If, therefore, the publishing of notice of intention is jurisdictional, the city council never obtained jurisdiction to levy the special tax upon the property of the plaintiffs, and hence the tax here in question is void. If the property of the plaintiffs could be legally assessed under the notice in question, we do not see why, the board of equalization could not have recommended that any and all property "adjacent" to the im-

provement should not also be assessed, and the city council could have done so by adopting an "amended ordinance." To so hold would practically do away with the publishing of a notice of intention as required by our statute.

We are clearly of the opinion that the judgment of the district court is right, and it accordingly is affirmed, with costs to the plaintiffs.

STRAUP, C. J., and McCARTY, J., concur.